[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 2, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-14255

_____

D. C. Docket No. 99-07677-CV-DTKH

AMBROSIA COAL & CONSTRUCTION COMPANY,
a Pennsylvania corporation,

Plaintiff-Appellant,

versus

HECTOR CARLOS PAGES MORALES,
ISLA VERDE BEACH HOTEL & CASINO, S.E., et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 2, 2007)**

Before BIRCH and PRYOR, Circuit Judges, and NANGLE,[*] District Judge.

_____

[*] Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri, sitting by designation.

NANGLE, District Judge:

This appeal stems from Appellant Ambrosia Coal & Construction Company's ("Ambrosia") Fourth Amended Complaint against Appellees.[1] The Complaint alleges that Appellees fraudulently induced Ambrosia into entering a settlement agreement relating to properties in Puerto Rico. Ambrosia's complaint sets forth twenty-four state claims and three federal claims brought pursuant to the Racketeer Influence and Corrupt Organization Act, ("RICO"). The district court dismissed the complaint for lack of subject matter jurisdiction, holding that there was a lack of complete diversity between Ambrosia (and its subsidiaries) and Appellees, and there were no viable federal claims that would allow the court to exercise federal question jurisdiction over the matter. Ambrosia appeals the motion to dismiss and asks this Court to find that the district court has subject matter jurisdiction over both the state and federal law claims.

There are two main issues before this Court. First, did Ambrosia acquire diversity jurisdiction in violation of 28 U.S.C. § 1359 when Ambrosia's non-diverse subsidiaries assigned their claims to their diverse parent corporation, Ambrosia. Second, did Ambrosia meet the pleading standards in its Complaint with respect to

---

[1] The following people and entities constitute Appellees in this matter: Hector Carlos Pages Morales, Ana Celia Pages, Isla Verde, S.E., Isla Verde Hotel & Casino Green Isle Partners Ltd, Green Isle-GP Ltd., S.E., and Aces Green Isle GP, Inc.. The aforementioned Green Isle entities are collectively referred to as "Green Isle."

the civil RICO claims.  Regarding the state law claims, we conclude that the district court erred in concluding diversity jurisdiction was collusively obtained.  With respect to the federal causes of action, we affirm the district court's dismissal of the civil RICO claims.

## I.	BACKGROUND

In 1985, Ambrosia, a Pennsylvania-based corporation, entered into a real estate transaction with Garita Hotel Limited Partnership ("Garita L.P."), an Ohio based partnership formed by George Malizia.  Ambrosia provided Garita L.P. with four million dollars in order for Garita L.P. to purchase a ninety-nine-year leasehold interest in beachfront property in Puerto Rico.  In exchange for supplying the financing, Ambrosia received a one hundred percent ownership interest in Garita Hotel Corporation ("Garita Hotel Corp."), a Puerto Rican corporation.  Garita Hotel Corp. is the majority owner and sole general partner of Garita L.P.  (collectively referred to as "the Garita entities").  In sum, the corporate structure of Ambrosia and the Garita entities is that of parent and subsidiaries, respectively.

George Malizia and Lenine Strollo, purporting to act on behalf of Garita L.P., attempted to sell the leasehold to Isla Verde Beach Hotel & Casino, S.E. ("Isla

3

Verde") for twelve and a half million dollars.[2]  Ambrosia claimed that it did not authorize the sale of the lease, and did not receive any consideration from the sale. Ambrosia sued in the Pennsylvania state courts.  Ultimately the court found in Ambrosia's favor and entered a consent order confirming that Ambrosia was the sole owner of Garita Corp., and, was therefore entitled to the proceeds of the unauthorized sale.

In 1994, Ambrosia, in its own right and on behalf of the Garita entities, advised Isla Verde and Mr. Pages of its intent to file an action relating to the title of the lease and/or for recovery of the consideration paid for the lease. After numerous exchanges via mail and phone conversations, in lieu of filing suit, a settlement agreement was reached.  The agreement provided that Green Isle, a limited partnership established under Florida law, would own the Lease.  Ambrosia agreed to relinquish its rights in the Lease in exchange for $750,000 in cash and a promissory note in the amount $3,250,000, payable on October 25, 2001.  The promissory note was subject to the condition that it be paid solely from cash distributions made from Green Isle to Mr.

---

[2]  Isla Verde Beach Hotel & Casino is owned by Hector Carlos Pages Morales.  Ambrosia claims that Isla Verde Beach Hotel & Casino knew of Ambrosia's interest in the leasehold.

Pages.[3]  According to the settlement agreement, Mr. Pages would receive a thirty-three percent limited partnership interest in Green Isle Partners Ltd., S.E.

Ambrosia claims that it entered into the settlement agreement based on the misrepresentation that Mr. Pages' interest in the Green Isle partnership would not be diluted in the future. Ambrosia alleges that the 1995 post-settlement restructuring of Green Isle's partnership agreement, which reduced Mr. Pages' interest in Green Isle to "Class B" limited partnership status, diluted Mr. Pages' interest, negatively impacted the terms of the settlement agreement, and impeded Ambrosia's ability to collect payment on its promissory note from Mr. Pages.  Furthermore, Ambrosia claims that misrepresentations were made during settlement negotiations which led Ambrosia to believe that Lenine Strollo and George Malizia would not be involved with any aspect of the future "project."

On September 15, 1999, Ambrosia's subsidiaries, Garita L.P. and Garita Hotel Corp., assigned their claims under the 1994 settlement agreement to Ambrosia. [4] Thus, Ambrosia's Puerto Rico and Ohio subsidiaries were not parties to the action when, in December of 1999, Ambrosia, as the sole plaintiff, commenced litigation

---

[3]  Specifically, Mr. Pages agreed to transfer half of his interest in the Green Isle partnership into a trust as a source of payment and security on the promissory note.

[4] Prior to the assignment, Ambrosia held a four million dollar judgment against the Garita entities.  Ambrosia reduced its judgment against the Garita entities by $100,000.00 in exchange for the assignment.

5

against Hector Carlos Pages Morales, Ana Celia Pages, Isla Verde, S.E., Isla Verde Hotel & Casino, and Green Isle; without the Garita entities involved, there is complete diversity of citizenship in this litigation.[5]

## II.  DISCUSSION

### a.  Assignment of Claims from Garita to Ambrosia

#### i.

Ambrosia alleged the existence of federal jurisdiction over its state law claims through diversity of citizenship, 18 U.S.C. § 1332.  Although on its face the action appears to have complete diversity amongst the parties, the district court found that Ambrosia improperly manufactured diversity jurisdiction in violation of 28 U.S.C. § 1359 when the Garita entities assigned their causes of action to Ambrosia.  Section 1359 states that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of the court."  28 U.S.C. § 1359.  The district court

---

[5]  Ambrosia is incorporated and headquartered in Pennsylvania; Ambrosia contends that the defendants are citizens of Puerto Rico, Florida, and/or Ohio. (District Court Order p. 5,6.) Therefore, complete diversity exists between the parties.  Furthermore, it is undisputed that Ambrosia's claims exceed the sum or value of $75,000 exclusive of interests and costs. However, if the Garita entities had not assigned their claims to Ambrosia diversity would be defeated—Garita L.P. is incorporated in Ohio and Garita Corporation is a Puerto Rican corporation. Additionally, Ambrosia does not deny that, prior to the assignment of the claims, that the Garita entities were indispensable parties to this lawsuit. (District Court Order, p. 6).

6

arrived at this conclusion by first applying a presumption of collusion against Ambrosia, which shifted the burden to Ambrosia to demonstrate that it had a legitimate business reason for the assignment. The court then found that Ambrosia failed to rebut the presumption, and held that Ambrosia achieved diversity of citizenship in violation of the anti-collusion statute, 28 U.S.C. § 1359. Accordingly, the court dismissed the claims for lack of subject matter jurisdiction.

This Court reviews <u>de novo</u> the district court's conclusion that it lacked proper subject matter jurisdiction to decide the case. <u>See</u> <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1318 (11th Cir. 2001). Factual findings regarding the citizenship of a party are subject to a clearly erroneous standard of review. <u>MacGinnitie v. Hobbs Group, LLC</u>, 420 F.3d 1234 (11th Cir. 2005).

*ii.*

Appellees contend that the district court correctly applied a presumption of collusion against Ambrosia, as other Circuits have done in evaluating assignments made between related entities. Contrary to Appellees' position, we hold that the district court erred in applying a presumption of collusion to the case at bar.

The Second Circuit has held that when a non-diverse parent company assigns its claims to a diverse subsidiary "engaged in no business other than the prosecution of that claim," the court presumes that diversity jurisdiction was collusively obtained in violation of 28 U.S.C § 1359. Prudential Oil Corp. v. Phillips Petroleum Co., 546 F.2d 469, 4768 (2d Cir. 1976). The Second Circuit later extended Prudential by applying the presumption of collusion to a non-parent-subsidiary assignment. Airlines Reporting Corp. v. S & N Travel, Inc., 58 F.3d 857 (2d Cir. 1995) (applying the presumption against Airlines Reporting Corp., a quasi-collection agency that sought to litigate claims on behalf of their airline clients who were owed money by a delinquent travel agency).

We find that Prudential and S & N Travel are factually distinguishable from the instant situation. In Prudential, the court held that the presumption of collusion applies to "downstream" assignments, namely, those assignments whereby the parent corporation assigns its claims to a subsidiary whose sole business purpose is to litigate the assigned claim. Here, however, it is the subsidiaries, Garita L.P. and Garita Hotel Corp., that assigned their claims to an already existing parent, Ambrosia. In S & N Travel, the assignee was merely an agent for the real parties in interest. Here, however, Ambrosia, the assignee, has business purposes beyond the litigation of the assigned claims and is the real party in interest.

8

In Nike, Inc. v. Commercial Iberica de Exclusivas Deportivas, S.A., 20 F.3d 987, 991-992 (9th Cir. 1994), the Ninth Circuit extended the presumption of collusion and applied it to the assignment of claims from a non-diverse Nike subsidiary to the diverse parent corporation (an "upstream" assignment). Appellees urge us to adopt Nike and affirm the district court's application of the presumption of collusion to the case before us. The Nike court solely relied on a quote from Green & White Constr. Co. v. Cormat Contr. Co., 361 F.Supp. 125, 128 (N.D.Ill. 1973), a case applying the presumption to an upstream assignment. The Seventh Circuit, however, has subsequently explicitly rejected the use of a presumption when evaluating assignments between related entities. Herzog Contracting Corp. v. McGowen Corp., 976 F.2d 1062, 1067 (7th Cir. 1992) (holding that "no inference of collusive invocation of jurisdiction can be drawn from the simple fact that assignor and assignee are under common ownership").

The reasoning of the Seventh Circuit is persuasive. The language of 28 U.S.C. § 1359 does not provide for applying a presumption of collusion in determining whether diversity jurisdiction was manufactured in violation of the statute. "Congress could if it wanted adopt a rule forbidding the conferral of diversity jurisdiction by assignment to an affiliated corporation but it has not done so and we are given no urgent reason to try to do so in its place even to the extent of creating a soft rule, that

9

is, a presumption." Herzog, 976 F.2d at 1067. Therefore, we are not persuaded by Appellees' argument that we should apply the presumption of collusion to upstream assignments. Accordingly, we find that the district court erred by commencing its evaluation of the assignment by applying a presumption of collusion against Ambrosia.

*iii.*

While other Circuits have reasoned that a presumption of collusion is appropriate when certain closely-related entities assign claims amongst themselves, there is no such binding precedent in this Circuit. Neither the Supreme Court nor the Eleventh Circuit has held that in cases where diversity jurisdiction is premised on the assignment of claims from a subsidiary to a parent corporation, a presumption of collusion is triggered. However, both the Supreme Court and the Eleventh Circuit have opined on the general topic of parties collusively obtaining federal diversity jurisdiction. As discussed above, we decline to follow the law of other Circuits that apply the presumption of collusion to cases such as the one before us, and evaluate the assignment from the Garita entities to Ambrosia under existing precedent.

In Kramer v. Caribbean Mills, 394 U.S. 823 (1969), the Supreme Court held that when the assignor retains an interest in the assigned claims, the assignee has no previous connection in the matter, and the assignment is made for the sole purpose of accessing the federal courts, the assignment is collusive in violation of 28 U.S.C. § 1359. Id. at 827-28. Likewise, we focus on the nature of the transfer, namely, whether the assignor has retained an interest in the assigned claim. See Gilbert v. Wills, 834 F.2d 935 (11th Cir. 1987) (holding that jurisdiction was collusively obtained when the plaintiff made a private side agreement that promised a portion of the litigation proceeds to potential plaintiffs so long as they did not intervene and destroy diversity between the parties); Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co., 546 F.2d 1227 (5th Cir. 1977) (holding diversity jurisdiction was collusively obtained because the transferor retained a one-half interest in the outcome of the litigation, and was an indispensable party but for the assignment).[6]

However, in Kramer, the Court explicitly stated that it was not disturbing prior decisions in cases where a claimant makes a bona fide, absolute transfer[7] of its claims to a diverse citizen for the purpose of invoking federal jurisdiction. Kramer, 394 U.S.

---

[6] The decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206 (11th Cir. 1981).

[7] An absolute transfer is one wherein the transferring corporation retains no interest in the outcome of the claims.

11

at 828. In such cases, the Court has held that federal jurisdiction is proper, and the motives of the transfer are irrelevant. Id. For instance, in Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518 (1928), the Court held that it was not collusive for a non-diverse corporation to dissolve and transfer its property into a new corporation for the purpose of creating diversity of citizenship. Id. at 524-25. The Court stated, "[s]o long as "[t]he succession and transfer were actual, not feigned or merely colorable. . .courts will not inquire into the motives when deciding jurisdiction." Id. at 524; cf. Miller & Lux v. East Side Canal & Irrigation Co., 211 U.S. 293 (1908) (finding that the transfer of interests was feigned because the newly-created, diverse corporation had no real interests in the matter, and the transferring corporation did not dissolve or cease to exist after creating the diverse corporation).

In evaluating the nature and validity of absolute transfers, the Supreme Court has also examined the consideration exchanged for the assigned claim. See Cross v. Allen, 141 U.S. 528 (1891) (holding that it is not a collusive transaction when valuable consideration is paid to transfer a debt to a bona fide purchaser, even if the transfer was for the purpose of invoking diversity jurisdiction); Lehigh Mining and Manufacturing Co. v. Kelly, 160 U.S. 327 (1895) (holding that jurisdiction was collusively obtained when a corporation made a grant of disputed land to a newly-

created, out-of-state corporation without exchanging any valuable consideration) (emphasis added).

We conclude that subject matter jurisdiction over Ambrosia's state law claims is proper, and does not violate the anti-collusion statute. Ambrosia is the real party in interest in this litigation and the Garita entities retained no interest in the assigned claims at issue. Since 1985, Ambrosia has been involved in the dispute relating to the title over the lease; it is Ambrosia that provided the four million dollars to purchase the lease in Puerto Rico; and, Ambrosia, on behalf of itself and its subsidiaries, spearheaded the litigation efforts ever since the Pennsylvania litigation. Furthermore according to the sworn statement by the president of Ambrosia, Carmen Schick, the assignment of claims between the Garita entities and Ambrosia were absolute transfers made in exchange for valuable consideration—in exchange for the claims, which Garita held pursuant to the 1994 settlement agreement, Ambrosia reduced its judgment against the Garita entities by $100,000. Ambrosia has placed and kept this judgment on its financial and accounting books, and as a result of the reduction in the judgment, Ambrosia was able to reduce its tax liability. Therefore, the district court erred in dismissing the state law claims for lack of subject matter jurisdiction.

### b. Civil RICO Claims

This Court reviews de novo the district court's dismissal of the civil RICO claim for failure to state a claim. Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).[8] In evaluating whether a complaint states a claim upon which relief can be granted,[9] we must accept the well-pleaded allegations of the complaint as true and draw all reasonable inferences therefrom in favor of the complaining party. Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1368-69 (11th Cir. 1997).

We affirm the district court's dismissal of Ambrosia's civil RICO claims. Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity. See FED. R. CIV. P. 9(b);[10] Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997). To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements,

---

[8] The district court dismissed the cause of action solely on lack of subject matter jurisdiction. The district court relied on a Second Circuit decision, Mendlow v. To Be Named After Discovery Unknown Government Agencies, et al., No. 97-7744, 1998 U.S.App. Lexis 15111 (2d Cir. June 1, 1998), and held that that there was a lack of diversity in citizenship between the parties and the complaint failed to allege the basic elements of a civil RICO claim, and thus, such a complaint can be dismissed for lack of subject matter jurisdiction.

[9] FED. R. CIV. P. 12(b)(6) motion is a "failure to state a claim upon which relief can be granted." "[T]o dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56." Id.

[10] Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

14

documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud. Brooks, 116 F.3d at 1380-81. In Brooks, we concluded that the complaint alleging a RICO claim did not meet the Rule 9(b) particularity standard[11] because it was devoid of specific allegations with respect to each defendant; the plaintiffs lumped together all of the defendants in their allegations of fraud. Id. at 1381. "[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." Id.

After a thorough review of Ambrosia's Fourth Amended Complaint, we conclude that Ambrosia failed to plead its civil RICO claims against each defendant with the required level of specificity.[12]

---

[11] The pleading requirements of FED. R. CIV. P. 9(b) are codified in the Local Rules of the United States District Court for the Southern District of Florida. See S.D. Fla. L.R. 12.1.

[12] For example in Count XXV, Ambrosia inaccurately states that Defendant Hector Carlos Pages Morales and Isla Verde Beach Hotel & Casino, S.E. defrauded Ambrosia as described in paragraphs 24-31 and 31-41, when in fact these paragraphs only discuss Strollo and Malizia's actions. Count XXV does not discuss the nature of each defendant's participation in the scheme, nor does Count XXV discuss each alleged statement, document, or misrepresentation made with the proper level of precision. Furthermore, Count XXV generally states that Ambrosia relied upon each of the material misrepresentations without specifying the content or manner in which the statements misled Ambrosia. Count XXVI mirrors Count XXV and the 9(b) issues equally apply to Count XXVI.

15

### III.  CONCLUSION

Accordingly, we REVERSE the district court with respect to Ambrosia's state law claims.  We find that subject matter jurisdiction exists, and, therefore we REMAND the state law claims for further proceedings.  With respect to the federal civil RICO claims, we AFFIRM the district court's dismissal of these claims.