[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 24, 2008
THOMAS K. KAHN
CLERK

No. 07-13421

D. C. Docket No. 06-00118-CV-FTM-29-DNF

WEST COAST ROOFING AND WATERPROOFING, INC.,
on behalf of itself and a class of persons similarly situated,

Plaintiff-Appellant
Cross- Appellee,

versus

JOHNS MANVILLE, INC.,
a Berkshire Hathaway subsidiary,
JOHNS MANVILLE INTERNATIONAL, INC.,
GAF MATERIALS CORPORATION,

Defendants-Appellees
Cross-Appellants,

BRIDGESTONE AMERICAS HOLDING, INC.,
d.b.a. Firestone Tire & Rubber Company,
VARIOUS JOHN DOES 1-1000
BFS DIVERSIFIED PRODUCTS, LLC,
d.b.a. Firestone Tire & Rubber Company,

Defendants-Appellees.

————————————————

Appeals from the United States District Court
for the Middle District of Florida

————————————————

**(July 24, 2008)**

Before BARKETT, FAY and STAPLETON,* Circuit Judges

PER CURIAM:

Plaintiff West Coast Roofing & Waterproofing, Inc. ("West Coast Roofing") filed a ten count class action complaint against defendants Johns Manville, Inc. ("Johns Manville"), Bridgestone Americas Holdings, Inc., d/b/a Firestone Tire & Rubber Company ("Firestone"), and GAF Materials Corporation ("GAF"), alleging several fraud-related causes of action, violations of state building codes, and conspiracy. The District Court dismissed the eight counts it characterized as "fraud-based claims" for failure to state a claim under Fed. R. Civ. P. 9(b), including a RICO claim that was the sole federal claim asserted. The Court ruled that the complaint stated a claim against all three defendants for violations of Florida's Building Code and conspiracy to violate Florida's Building Code, but it declined to exercise further supplemental jurisdiction over those counts.

_____

* Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

## I. Background

Plaintiff West Coast Roofing is a roofing contractor that purchases and installs "built-up bituminous roofing systems" for commercial and other construction projects. These roofing systems incorporate "tapered perlite," a rigid board insulation. Defendants Firestone and GAF manufacture and sell bituminous roofing systems and system components to contractors such as plaintiff. Their roofing systems incorporate tapered perlite material, including tapered perlite procured from defendant Johns Manville. Plaintiff avers that it has purchased bituminous roofing systems from defendants since the 1980s.

Plaintiff's roofing systems must meet state and local building code regulations. Those regulations require that plaintiff's roofs are able to withstand minimum levels of "wind uplift pressures" so that the roofs do not fail in hurricanes or other windstorms. Plaintiff is required to certify that the roofs it installs satisfy the code's requirements. Plaintiff avers that, in so doing, it must rely on representations of the designers, manufacturers and suppliers of the roofing systems, including defendants. Plaintiff further alleges that it purchased roofing systems from defendants Firestone and GAF in reliance upon representations made by those companies regarding the wind uplift capacities of their roofs.

In 2005, plaintiff purchased from Firestone and installed a built-up

bituminous roofing system, which included tapered perlite insulation sold by Johns Manville, for a construction project called the Riva Del Lago ("Riva") project in Fort Myers, Florida. Plaintiff avers that its client, the owner of the building, subsequently conducted independent testing of the Riva roof's uplift capacity to determine whether it complied with the Florida Building Code, and the roof failed the wind uplift test by "huge margins, because the tapered perlite insulation literally tore apart, causing the roof system to separate from the building." Second Amended Complaint at 13 ¶ 30. Plaintiff avers that it was required "by its contractual commitments to the owner and contractor and the building code, to install concrete pavers over the built-up roofing system to remediate the problem, at a cost in excess of $260,000." Second Amended Complaint at 15 ¶ 35.

Plaintiff further alleges that the Riva project was not an isolated incident; plaintiff alleges that defendants have made "continuous fraudulent representations" regarding the wind uplift capacities of their roofing systems for more than a decade, and that "[t]he built-up roofing systems sold and recommended by Defendants Firestone and GAF do not meet their stated uplift capacities because the tapered perlite manufactured and sold by Johns Manville fails, tearing apart at a fraction of the capacity represented by Johns Manville and well below building code requirements." Second Amended Complaint at 12 ¶ 28.

Plaintiff avers that "[f]urther investigation revealed that Defendants knew or should have known that all of their perlite roofing systems cannot withstand applicable wind uplift requirements...." Second Amended Complaint at 13 ¶ 31.

## II. Proceedings

Plaintiff voluntarily amended its initial pleading in a First Amended Complaint, and each of the defendants moved to dismiss. The District Court granted in part and denied in part all three motions. The Court characterized several of plaintiff's claims as "fraud-based claims" and granted defendants' motions to dismiss them, without prejudice, finding that the complaint failed to plead fraud with adequate particularity under Fed. R. Civ. P. 9(b). The Court, however, found that under Fed. R. Civ. P. 8(a)'s notice pleading standard, the complaint stated a claim for violations of the Florida Building Code and conspiracy to violate the Florida Building Code.

Plaintiff next filed a ten count Second Amended Complaint ("Complaint").[1] Plaintiff attached to this pleading seven exhibits, totaling roughly 245 pages, which plaintiff alleged are "examples" of defendants' misrepresentations

_____

[1]The Complaint's ten counts are as follows: (1) fraud in the inducement (against Firestone and GAF only); (2) common law fraud; (3) fraudulent concealment; (4) negligent misrepresentation; (5) information negligently supplied for the guidance of others; (6) violations of the Florida building code, Fla. Stat. § 553.84; (7) violation of Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. § 501.238(8); (8) violation of other state unfair trade practices acts; (9) civil conspiracy; and (10) violation of RICO, 18 U.S.C. § 1961(5), predicated on mail and wire fraud violations.

5

regarding the wind uplift capacities of their roofing systems.[2]

Each of the three named defendants again moved to dismiss, and the District Court again granted the motions in part and denied them in part. The Court found Fed. R. Civ. P. 9(b) applicable to eight of the claims (counts 1-5, 7-8 and 10) and analyzed those jointly to determine whether the allegations satisfied Rule 9's particularity requirement. The Court dismissed those claims, this time with prejudice, on the grounds that plaintiff again failed to plead fraud with particularity. The Court also dismissed the conspiracy claim, Count 9, insofar as it was predicated on those counts. While reiterating its view that the allegations regarding the Florida Building Code and conspiracy to violate that Code stated a claim, the Court dismissed those claims without prejudice. It found that the Second Amended Complaint had failed to satisfy the requirements for diversity jurisdiction, and that further exercise of supplemental jurisdiction was inappropriate because it had dismissed the RICO claim in Count 10, the only claim over which it had federal question jurisdiction. The Court entered final judgment,

---

[2]Plaintiff filed its complaint as a putative class action on behalf of "all persons that have purchased and/or installed built-up bituminous roofing systems designed, advertised, recommended and/or manufactured by Firestone and GAF which included tapered perlite materials advertised, manufactured and supplied by Johns Manville and their distributors throughout the United States," Second Amended Complaint at 4 ¶ 11, a class which, plaintiff believes, exceeds 1,000 members. Second Amended Complaint at 5 ¶ 12. There has been no class certification.

and these appeals followed.[3]

## III. Analysis

In its appeal, plaintiff West Coast Roofing argues (1) that the District Court erred when it ruled that the Second Amended Complaint failed to plead fraud with particularity; that (2) the District Court abused its discretion by dismissing the fraud-based claims with prejudice; and that (3) the District Court erred when it concluded that plaintiff had failed to establish the requirements for diversity jurisdiction.

Defendants GAF and Johns Manville cross-appealed the District Court's denial of their motion to dismiss with prejudice plaintiff's claims for violations of the Florida Building Code and conspiracy to violate the Building Code. Firestone has not cross-appealed.

### A. Particularity of the Fraud Allegations

Federal Rule of Civil Procedure 9(b) states:

(a) Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. Rule Civ. P. 9(b) ("Rule 9(b)"). The "particularity" requirement "serves an

---

[3]We have jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* the District Court's grant or denial of a motion to dismiss, accepting as true all well-pled facts alleged in the complaint. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted). *See also Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985) (Rule 9(b) serves to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed").

To satisfy Rule 9(b)'s "particularity" standard, we generally require that a complaint identify (1) the precise statements, documents or misrepresentations made; (2) the time and place of and persons responsible for the statement; (3) the content and manner in which the statements misled the plaintiff; and (4) what the Defendants gains by the alleged fraud. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). *See also U.S. ex el. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006). Furthermore, Rule 9(b) requires more than conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud. *See U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002) ("If Rule 9(b) is to carry any water, it must mean that an essential allegation and circumstance of fraudulent conduct cannot be alleged in [] [a] conclusory fashion . . . . [A] plaintiff is not expected to actually *prove* his

allegations," but it must offer more than "mere conjecture.").

The parties have assumed that the District Court was correct to apply Rule 9(b) to the eight claims the Court characterized as fraud-based claims, and therefore we will do same. We need only note that the District Court was certainly correct to apply Rule 9(b) to plaintiff's RICO claim predicated on a pattern of mail and wire fraud offenses. *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-82 (11th Cir. 1997) (Rule 9(b) applies to a RICO action predicated on a pattern of mail and wire fraud; requiring that plaintiff identify the fraudulent representations with particularity and that, "at a minimum, the plaintiffs [] allege sufficient facts with enough specificity to show probable cause that the predicate acts were committed") (citations omitted); *Ambrosia Coal & Const. Co.*, 482 F.3d at 1316-17 (similar).

In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations "lumping" multiple defendants together are insufficient. *Ambrosia Coal & Const. Co.*, 482 F.3d at 1317; *Brooks*, 116 F.3d at 1381.

In its appeal, plaintiff contends both that the District Court erred when it ruled that the Second Amended Complaint failed adequately to plead a long term, continuous course of fraudulent conduct and also that it, at a minimum, adequately pled fraud with respect to the Riva Del Lago project.

9

Before addressing the various statements alleged to have been made by each defendant, it is important to identify a defect in the Second Amended Complaint common to all three defendants. Plaintiff's Second Amended Complaint alleges generally (1) that the three defendants have made fraudulent representations (upon which plaintiff relied) for more than a decade; but that (2) plaintiff only "discovered" that those statements were fraudulent in 2005, in the course of the Riva project. Plaintiff identifies only one specific instance in which it allegedly relied upon defendants' representations to its detriment: the Riva project. Apart from the Riva project, plaintiff fails to explain which particular statements it relied upon, how it relied upon them, and what adverse consequences it suffered as a result of doing so – the basic circumstances of fraud.[4] The Complaint avers that only one single roof, the Riva roof, failed at wind uplift levels lower than those claimed by defendants, and plaintiff asks us to infer from one alleged roof failure that *all* of defendants' roofs are weaker than they were represented to be. We will decline to do so; Rule 9(b) requires plaintiff to offer more than mere conjecture in support of such a claim. With this common background, we will turn to the allegations concerning the representations made by each defendant.

---

[4]We find in the Complaint one single instance other than the Riva project – a project called the Marina Del Sol project, identified in the Complaint's Exhibit D – in which plaintiff purchased a roof from defendants, but plaintiff pleads no facts remotely suggesting that any statements it relied upon when doing so were fraudulent and no facts about how any statement was relied upon or the effect of any such reliance. We discuss Exhibit D further *infra*.

10

## 1. Firestone

The Second Amended Complaint itself does not identify any specific fraudulent statements by any of the three defendants other than statements regarding the Riva project. However, plaintiff attached to the complaint seven exhibits, totaling roughly 245 pages, which plaintiff avers are "examples" of defendants' ongoing fraudulent representations. Several of those exhibits are pertinent to defendant Firestone. Exhibits A contains "[p]roduct approval guides and/or uplift testing information sheets," and Exhibit B contains "Notices of Acceptance submitted to Miami-Dade County," which defendants Firestone and GAF allegedly published on the internet. Second Amended Complaint at 9 ¶ 24.A. Plaintiff contends that defendants have continuously published documents similar to these on the internet "from at least 1998 until present." *Id*. These exhibits consist of more than two hundred pages of product specifications and wind uplift information, but the Second Amended Complaint fails to identify which representations within the documents are false. That pleading's generalized allegations that these voluminous documents contain "examples" of false statements somewhere within them fail to satisfy Rule 9(b). Rule 9(b) requires plaintiff to identify the allegedly fraudulent representations with particularity; these three Exhibits, alone, afford defendants no particularized notice of the allegations against them.

11

Exhibits D-G consist of three emails and one fax that, plaintiff avers, are further "examples" of defendants' fraudulent representations. Three of those four documents, Exhibits D and F-G, are pertinent to defendant Firestone. Exhibits F and G are emails regarding the Riva project and are not indicative of a fraudulent course of conduct extending beyond the Riva project. Exhibit D is an email from a representative of Firestone regarding a different project, one called Marina Del Sol. However, the complaint neither explains the circumstances of that project nor plead facts suggesting that Exhibit D was in any way false; its conclusory allegation that Exhibit D is an "example" of fraud does not satisfy Rule 9. For these reasons, the Complaint fails to plead a fraudulent course of conduct by Firestone extending beyond the Riva project.

Plaintiff contends that, at a minimum, it adequately pled fraud in connection with the Riva project. We agree that plaintiff adequately pled common law fraud against Firestone in connection with the Riva project. The complaint and its exhibits specify the precise representations alleged to be false: that "[d]uring the bidding and submittal phases of the project, West Coast and the general contractor, BBL Florida, relied upon Firestone's representation that the roofing system complied with FM Class 1-240, and would accordingly withstand up to 120 pounds per square foot of uplift pressure." Second Amended Complaint at 12-13 ¶ 29. The emails and faxes appended to the complaint offer some support to plaintiff's

12

contentions. As the complaint explains, "on July 19, 2005, Scott Swink, an authorized agent of West Coast, submitted a letter [Exhibit F] to BBL Florida in which Mr Swink cited to and directly relied upon representations contained in Firestone's 2004 wind code approval guide. Mr. Swink relied upon these representations to assure BBL Florida that the chosen roofing system would exceed the applicable wind resistance requirements." Second Amended Complaint at 13 ¶ 29. The complaint further alleges that "on August 8, 2005, Mark Minteer, an authorized agent of Firestone, submitted a letter [Exhibit G] to Scott Swink, in which Mr. Minteer urged Mr. Swink to utilize the specific system eventually installed on the Riva project...." *Id.* These averments identify the statements alleged to be false with specificity.

Moreover, the Second Amended Complaint offers more than mere conjecture about whether the above-cited statements were in fact false or fraudulent. Plaintiff alleges that its client, the owner of the Riva project, conducted independent tests of the Riva roof's uplift capacity and the roof failed by "huge margins." Second Amended Complaint at 13 ¶ 30. Accepting that averment as true, a fair inference is that defendant's representations regarding the wind uplift capability of the Riva roof were false, because the roof could not withstand the uplift pressures that defendant claimed they could. While plaintiff provides only conclusory allegations that defendant made those statements knowing they were false – less culpable

13

explanations are certainly possible – Rule 9(b) permits states of mind, including knowledge, to be pled generally. Fed. R. Civ. P. 9(b). For these reasons, plaintiff's Second Amended Complaint states a claim for common law fraud against Firestone for Firestone's representations concerning the wind uplift capacity of the Riva roof, and the District Court therefore erred when it dismissed all of plaintiff's fraud claims with prejudice.

While we agree with plaintiff that it has alleged common law fraud claims against Firestone with respect to the Riva project, we reach a contrary conclusion with respect to its RICO claim against Firestone. First, we note our agreement with the District Court that Count 10 fails to allege mail and wire fraud with the particularity required by Rule 9. Here, as with the other counts, with the exception of the Riva project, the Second Amended Complaint does not sufficiently identify the defendants' misrepresentations, plaintiff's reliance, or the consequences thereof.[5] Second, while count 10 incorporates by reference, *inter alia*, the allegations we have quoted above in discussing the common law fraud claims

---

[5]Count 10 itself alleges only two predicate offenses: (1) that defendants "published . . . at least two documents, including product specification sheets, product approval guides, and information sheets, that were subsequently distributed to [plaintiff] through the United States interstate mail service," Second Amended Complaint at 25 ¶ 99.A; and (2) that defendants' made ongoing fraudulent representations in the above-described internet documents, which "were subsequently accessed by or sent to Plaintiffs, through the worldwide internet..." Second Amended Complaint at 25-26 ¶ 99.B. The former is not further explained – the complaint does not identify the two documents or describe their relevance – and is far too general to satisfy Rule 9(b). The latter fails to satisfy rule 9(b), for the reasons set forth above.

regarding the Riva project, those allegations do not appear to be a part of the wire and mail fraud averments relied upon in Count 10. Moreover, those allegations regarding representations during "the bidding and submittal phases" of a single construction project to induce purchase of a single roofing system clearly do not constitute the required pattern of criminal conduct of a <u>continuing</u> nature. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004)(to state a RICO claim the alleged predicate acts must constitute "criminal conduct of a *continuing* nature") (emphasis in original).

Finally, we conclude that the District Court properly dismissed with prejudice Count 8, which alleges violations of the unfair trade practices acts of every State other than Florida. Because we have found that plaintiff's fraud-based claims adequately plead common law fraud only in connection with the Riva project, a Florida project, those claims can not reasonably be read to state a claim for violations of the unfair trade practices acts of States other than Florida.

## 2. Johns Manville

The Second Amended Complaint identifies only one specific "example" of an allegedly false representation by Johns Manville: "[f]rom at least 1998 to present, Defendant Johns Manville has continuously published, on the internet, FM Approval Guides and FM Wind Uplift Summaries used and relied upon by West Coast and the Class, which falsely state that its perlite product can achieve a

15

specific code-compliant wind uplift resistance..." Second Amended Complaint at 9 ¶ 24.A. Plaintiff attached Exhibit C as an example of these allegedly false approval guides and uplift summaries. However, Exhibit C contains several pages of wind uplift information, and the Second Amended Complaint fails to identify which particular representations therein were false; nor does it allege that plaintiff relied on these statements to its detriment. That pleading's remaining allegations against Johns Manville are far too general to state a claim for a long term course of fraudulent conduct under Rule 9(b).

Plaintiff also contends that Johns Manville defrauded it in the course of the Riva project. The Second Amended Complaint avers that the roof Firestone provided for the Riva project utilized Johns Manville's tapered perlite, and it avers that the Riva roof failed wind uplift tests by "huge margins" because "the tapered perlite insulation literally tore apart, causing the roof systems to separate from the buildings." Second Amended Complaint at 13 ¶ 30. It does not, however, identify any specific false statements by Johns Manville regarding the Riva roof. Further, defendant does not allege that it ever relied on any representation by Johns Manville when bidding on the Riva roof. In fact, the complaint expressly avers that plaintiff relied on *Firestone's* representations, rather than those of Johns Manville, when bidding on the roof for the Riva project. Second Amended

16

Complaint at 12 ¶ 29.[6]  For these reasons, the District Court properly dismissed all

fraud-based claims against defendant Johns Manville for failure to state a claim.

### 3.  GAF

Finally, the Second Amended Complaint alleges generally that defendant

GAF engaged in a long term course of fraud.  Exhibits A and B, discussed above,

include "[p]roduct approval guides and/or uplift testing information sheets" and

"Notices of Acceptance," which allegedly are "examples" of GAF's fraudulent

statements.  As with Firestone and Johns Manville, however, the Second Amended

Complaint fails to identify which particular statements within those lengthy

internet documents were false.  Plaintiff includes only one further "example" of an

allegedly false representation by GAF – Exhibit E, which the Second Amended

Complaint describes as follows:

> GAF[] submitted a facsimile to West Coast containing excerpts from
> a GAF Factory Mutual Research Approval Guide . . . . This Approval
> Guide represented that the GAF roofing systems complied with
> specific FM testing protocols.  West Coast relied upon the
> representations contained in this document when it chose to purchase
> GAF roofing systems for projects that took place in 2001 and
> thereafter.

Second Amended Complaint at 11 ¶ 24.  Again, the Second Amended Complaint

---

[6]Similarly, the complaint avers more generally that "West Coast and the Class must and do rely on specific factual representations by *Firestone* and *GAF* regrading the ability of their roofing systems to achieve specific code-compliant levels of wind resistance."  Second Amended Complaint at 7 ¶ 23 (emphasis added).

fails to identify which of the many "testing protocols" listed in Exhibit E were false. Further, it does not allege that GAF had any involvement in the Riva project, and it neither identifies with particularity any instances in which GAF's roofs failed to live up to their claimed uplift capacities nor offers any reason to believe that they will not in the future. Therefore, the District Court properly dismissed all fraud-based claims against GAF.

For these reasons, we hold that plaintiff's Second Amended Complaint adequately pleads a common law fraud against defendant Firestone for Firestone's representations to plaintiff regarding the wind uplift capacity of the Riva roof. However, we conclude that that pleading fails to plead with particularity that Firestone undertook a continuous course of fraudulent conduct extending beyond the Riva project or that Firestone's conduct with respect to that project states a RICO claim. Finally, we conclude that the District Court properly dismissed all fraud-based claims against defendants GAF and Johns Manville, including plaintiff's RICO claim.

## B. Dismissal with Prejudice

Plaintiff contends that the Court erred when it dismissed the fraud based claims of plaintiff's Second Amended Complaint with prejudice, denying plaintiff another opportunity to amend its pleading. Plaintiff first amended its pleading voluntarily, and plaintiff again amended its complaint following the District

Court's ruling on defendants' motions to dismiss the First Amended Complaint. Plaintiff now contends that, in its Second Amended Complaint, it made a good faith effort to comply with the District Court's directions by adding considerable detail to its most recent pleading. It emphasizes that dismissal with prejudice is a "severe sanction, its imposition is justified when a party chooses to disregard the sound and proper directions of the District Court." Plaintiff's Br. at 36 (quoting *Friedlander*, 755 F.2d at 813).

Plaintiff, however, failed to request leave to amend its complaint from the District Court. We have held that, "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the District Court." *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Plaintiff responds to *Wagner* only by citing pre-*Wagner* cases and cases of other Courts of Appeals which have adopted a rule different than ours. We find no reason to depart from our holding in *Wagner* in this case, and we hold that the District Court did not abuse its discretion when it failed to grant plaintiff another opportunity to amend its fraud-based claims.[7]

---

[7]The District Court's consideration of the motions to dismiss the state law fraud based counts came at a time when it still had the RICO claim before it and having resolved the merits of those motions, it was of course, entitled to simultaneously dismiss with prejudice both to the state fraud and RICO claims.

## C. Jurisdiction of the Florida Building Code claims

Finally, we must address plaintiff's two remaining counts: Counts 6 and 9, which allege violations of the Florida Building Code, and conspiracy to violate the Florida Building Code (jointly, "Building Code claims"). The District Court denied defendants' motions to dismiss the Building Code claims for failure to state a claim, but it ruled that plaintiff had failed to establish the requirements for diversity jurisdiction and that, having decided to dismiss plaintiff's only federal claim, it would not further exercise its supplemental jurisdiction over those claims. Therefore, the Court declined to exercise jurisdiction over those claims but allowed plaintiff to re-file them in State court.

Plaintiff argues that the District Court erred when it found that the Second Amended Complaint fails to qualify for diversity jurisdiction. Defendants GAF and Johns Manville cross appeal the District Court's ruling that plaintiff adequately pled a violation of the Florida Building Code, arguing that the District Court should have dismissed the two counts with prejudice for failure to state a claim.

As we have explained, we conclude that the District Court properly dismissed plaintiff's only federal claims against Johns Manville, Firestone and GAF. We further conclude that, having done so, it acted within its discretion in deciding not to exercise jurisdiction over the Florida Building Code claims against these defendants.

First, we agree that the Second Amended Complaint fails to allege facts supporting diversity jurisdiction over these claims. As plaintiff acknowledges, it does not allege diversity of citizenship between itself and these defendants, relying instead on the class action allegations of the Second Amended Complaint and 28 U.S.C. § 1332(d), which confers diversity jurisdiction in a class action when a member of the class has citizenship diverse from that of defendant and the amount in controversy exceeds $5,000,000. The problem with this jurisdictional theory is that the Second Amended Complaint, which defines a <u>national</u> class, cannot reasonably be read as alleging a class claim based on Florida's Building Code. While Count VI purports to state a claim on behalf of the class, its allegations are in irreconcilable conflict with the class action allegations of the Second Amended Complaint.[8]

It follows that the only possible basis for jurisdiction to entertain the Florida Building Code claims is supplemental federal jurisdiction. Having dismissed all of the federal claims, it was well within the discretion of the District Court to decline further to exercise supplemental jurisdiction over those claims and to dismiss them without prejudice.

---

[8]The Second Amended Complaint alleges claims on behalf of a putative class believed to include in excess of 1,000 members "throughout the United States." Second Amended Complaint at 4 ¶¶ 11-12, which has suffered damages in excess of $5,000,000. *Id*. at 2 ¶ 1. A substantial but indeterminable portion of this class obviously has no claim under Florida's Building Code. Similarly, the amount in controversy between Florida roofers and the defendants is indeterminable from the Second Amended Complaint.

## IV. Conclusion

As we have explained, the District Court dismissed the fraud based claims against Johns Manville and GAF in Counts 1 through 5 and 7 through 10 with prejudice and the Florida Building Code claims in counts 6 and 9 without prejudice. We will affirm its disposition of all of these claims, thus terminating these proceedings with respect to those parties. We will also affirm the dismissal of Count 10's RICO claim and count 8's claims of violations of non-Florida unfair trade practices acts against Firestone with prejudice, and its dismissal of the Florida Building Code claims of counts 6 and 9 without prejudice. We will vacate and remand the District Court's judgment in Firestone's favor with respect to Counts 1 through 5 and 7, and count 9 to the extent it may be predicated on those counts, for further proceedings limited to the allegations regarding the Riva project. Those proceedings may include consideration by the District Court of whether it should decline to exercise its supplemental jurisdiction over those counts given the absence of any federal claim in the proceeding that will be before it. If it should choose that course, as may be suggested by its disposition of the Florida Building Code claims, its dismissal of the Riva project fraud claims should be without prejudice.

**AFFIRMED in PART; VACATED and REMANDED in PART.**

22