[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 14-12115

————————————————

D.C. Docket No. 1:12-cv-22439-MGC

MICCOSUKEE TRIBE OF INDIANS OF FLORIDA,

Plaintiff - Appellant,

versus

BILLY CYPRESS,
DEXTER WAYNE LEHTINEN,
Esquire, et al.,

Defendants - Appellees.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(December 22, 2015)

Before HULL, BLACK and MELLOY,* Circuit Judges.

MELLOY, Circuit Judge:

_____

*Honorable Michael J. Melloy, United States Circuit Judge for the Eighth Circuit, sitting by designation.

Plaintiff Miccosukee Tribe of Indians of Florida (the "Tribe") appeals from two orders and a final judgment in a fraud-and-embezzlement-related RICO suit against former tribal officials, several attorneys, a law firm, and investment firm Morgan Stanley Smith Barney LLC ("Morgan Stanley"). In a first order, the district court granted Morgan Stanley's motion to compel arbitration and dismissed Morgan Stanley from this suit. In a second order, the district court dismissed two federal RICO claims for lack of subject matter jurisdiction, holding the claims presented a non-justiciable intra-tribal conflict. In the alternative, the district court held the complaint failed to state a federal claim. Diversity is lacking, and the district court elected to enter final judgment rather than retain supplemental jurisdiction over several state-law claims.

Here, the undisputed current leaders of the Tribe seek entry into federal court asserting federal question jurisdiction based on federal statutory claims against Tribal and non-Tribal members alike. On the pleadings as presented at this stage of the proceedings, general justiciability concerns regarding intra-Tribal conflicts do not defeat jurisdiction. We affirm dismissal of the suit for failure to state a claim, however, because the Tribe did not challenge the dismissal on these grounds in its opening brief and because the complaint lacks the requisite specificity and fails to state a plausible claim.

2

I.    The Parties

The Plaintiff, the Miccosukee Tribe, is a federally registered tribe in Southern Florida.  The defendants include: (1) Billy Cypress, the Tribe's former Chairman; (2) Julio Martinez, the Tribe's former CFO; (3) Miguel Hernandez, the Tribe's former Director of the Department of Finance; (4) Guy Lewis, a non-Tribal-member attorney in Miami; (5) Michael Tein, a non-Tribal-member attorney in Miami; (6) Lewis Tein, P.L., their firm; (7) Dexter Wayne Lehtinen, a non-Tribal-member attorney for the Tribe; and (8) Morgan Stanley Smith Barney, LLC.  Counsel for the defendant attorneys and counsel for Morgan Stanley have entered appearances in our court, filed briefs, and participated in this appeal.  Counsel for the former-Tribal-leader defendants have neither entered appearances in our court nor filed briefs.

Cypress was the elected Chairman of the Tribe for a period of twenty-two years, including the years 2005 to 2010 during which time he is alleged to have orchestrated the looting of over $26 million from the Tribe.  The Tribe alleges specifically that he: (1) took over $11.5 million largely in a series of $5,000 or $10,000 withdrawals from ATMs while visiting various casinos around the United States; (2) used Tribal credit cards to make more than $3 million in unauthorized purchases; (3) orchestrated a scheme to provide private legal services to himself and other Tribal members at Tribal expense at the same time the attorneys in

3

question were representing the Tribe; (4) orchestrated a scheme to pay inflated rates for unnecessary legal work in exchange for kickbacks from attorneys (the combined legal-work related schemes allegedly resulted in a loss of approximately $11 million); and (5) allowed Martinez and Hernandez to make excessive and unauthorized purchases with Tribal credit cards totaling approximately $1 million. Notwithstanding these general allegations which clearly and implicitly presume the existence of Tribal-law-based limitations on Cypress's use of funds and use of counsel, and notwithstanding the Tribe's repeated characterization of Cypress's actions as "unauthorized," the Tribe alleges that, as Chairman, Cypress "oversaw, controlled, supervised and *had unrestricted access and control over all the financial funds and records* of the [Tribe] which are the subject of this lawsuit." (Emphasis added).

The Tribe alleges generally that the Lewis Tein defendants were the attorneys involved in the scheme. The Tribe also alleges that Martinez and Hernandez had access to the Tribe's financial records during Cypress's tenure (including monthly statements from Morgan Stanley), knew of Cypress's malfeasance, and concealed Cypress's actions and spending from the Tribe. The Tribe further alleges Morgan Stanley participated in these frauds against the Tribe.

Finally, the Tribe alleges several related state-law claims against various combinations of defendants as well as an unrelated state-law claim against attorney

4

Lehtinen.[1]  In alleging RICO claims, the Tribe identifies as predicate RICO offenses the federal offenses of: mail fraud, 18 U.S.C. § 1341; laundering of monetary instruments, 18 U.S.C. § 1956; and engaging in monetary transactions in property derived from unlawful activity, 18 U.S.C. § 1957.

The issues on appeal are limited.  First, we address the initial order granting Morgan Stanley's motion to compel arbitration and dismissing Morgan Stanley from this suit.  Second, we address whether federal subject matter jurisdiction is barred by an intra-tribal dispute over which the sovereign Tribe rather than the federal courts must preside.  And third, because we conclude subject matter jurisdiction is not barred, we address whether the complaint articulates a federal claim.

II.    Order Compelling Arbitration and Dismissing Morgan Stanley

The Tribe alleges Morgan Stanley and former Tribal Chairman Billy Cypress colluded in violation of RICO to steal funds from the Tribe.  The Tribe appears to allege specifically that (1) initially, a Morgan Stanley representative in Florida actively colluded with Cypress in a manner detrimental to the Tribe, and

---

[1] The appeal against Lehtinen is moot because the Tribe did not appeal the dismissal of its state-law claims and there are no federal RICO allegations against Lehtinen.

5

(2) subsequently, Morgan Stanley failed to execute account controls and protections to recognize and act upon a long series of suspicious cash withdrawals. Shortly after the Tribe filed the present suit, Morgan Stanley moved to compel arbitration. The district court granted the motion.

In granting the motion, the district court relied on an arbitration provision in a 2008 account agreement Cypress entered into with Morgan Stanley on behalf of the Tribe.[2] The relevant language stated:

> 6. Arbitration
>
> This agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement the parties agree as follows:
>
> All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
>
> . . .
>
> I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and [Smith Barney] and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with [Smith Barney] individually or jointly with others in any capacity; (ii) any transaction involving [Morgan Stanley] or any predecessor firms by merger, acquisition or other business

---

[2] Cypress actually entered into several account agreements on behalf of the Tribe with Smith Barney and other predecessors to Morgan Stanley Smith Barney LLC. Although the Tribe disputes the validity of all the agreements, the Tribe acknowledges that, to the extent they may be valid, Morgan Stanley is now a party to the agreements and is the proper defendant. The parties focus their attention on the 2008 agreement signed by Cypress, and the Tribe does not allege the other agreements contain materially different arbitration language or require separate examination or analysis.

combination and me, whether or not such transaction occurred in such account or accounts; or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of [Smith Barney] or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which [Smith Barney] is a member . . . .

The district court noted that the Tribe did not attack the validity of the arbitration provision in particular nor did the Tribe argue that the RICO claims at issue were of a type falling outside the scope of the arbitration provision. Rather, the Tribe challenged only Cypress's authority to contractually bind the Tribe. The district court enforced the arbitration provision, holding Cypress possessed actual and apparent authority to contractually bind the Tribe.

We review de novo the district court's order granting the motion to compel arbitration. See Doe v. Princess Cruise Lines, Ltd., 657 F.3d 1204, 1213 (11th Cir. 2011). Arbitration is a matter of consent, and a party's agent may bind the party to arbitration. See Bd. of Trs. of City of Delray Beach Police and Firefighters Ret. Sys. v. Citigroup Glob. Mkts., Inc., 622 F.3d 1335, 1342 (11th Cir. 2010). "The determination whether a signatory . . . had the authority to bind a non-signatory . . . to arbitrate 'turns on the specific facts of each case,'" and generally is an issue for the court to decide "unless the parties have clearly delegated to the arbitrator responsibility for this determination." Id. (citations omitted). Here, the Tribe argues two questions surround the agreement to arbitrate: first, whether Cypress

7

had either actual or apparent authority to bind the Tribe; and second, whether the alleged acts of fraud eliminated such authority.  In addressing these questions, we note that the arbitration provision at issue in this case expressly and clearly indicates that disputes as to the "the construction, performance or breach of this . . . agreement" are subject to arbitration.

The district court concluded that the Tribe's own pleadings, as set forth in their Second Amended Complaint, established that Cypress possessed actual and apparent authority to enter into the account agreements on behalf of the Tribe.  We agree with the district court that Cypress possessed at least apparent authority to bind the Tribe and find arguments to the contrary to be frivolous and unworthy of discussion.

Whether alleged acts of fraud and collusion between Cypress and the Morgan Stanley representative effectively eliminated such authority raises a separate issue.  The Supreme Court has addressed the precise issue of how allegations of fraud affect the enforceability of an arbitration agreement.  See Prima Paint Corp. v. Flood & Conklin Mfg., 388 U.S. 395 (1967).  In Prima Paint, the Court held that, where an agreement containing an arbitration provision exists, allegations that the entire agreement was the product of fraud must be presented to the arbitrator for resolution.  Id. at 403–04.  The Court drew a distinction, however, holding that if a party opposing arbitration alleges specifically that the arbitration

8

provision itself, as contrasted with the entire agreement, was the product of fraud, then the court is to address the allegation of fraud before ordering arbitration.  Id.; see also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010) ("[W]here the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract . . . we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.")

Here, the Tribe articulates no arguments that differentiate between alleged fraud in the formation of the contract and fraud specifically in the inclusion of an arbitration provision.  As such, pursuant to Prima Paint and Rent-A-Center, West, the effect of any alleged fraud upon Cypress's authority is an issue to be raised in arbitration rather than an issue for the court to address in assessing whether to order arbitration.  We affirm the district court's judgment in granting Morgan Stanley's motion to compel arbitration.

III.    Dismissal for Lack of Jurisdiction: Intra-Tribal Dispute

"Indian tribes are distinct, independent political communities, retaining their original natural rights in matters of local self-government.  Although no longer possessed of the full attributes of sovereignty, they remain a separate people, with

9

the power of regulating their internal and social relations." <u>Santa Clara Pueblo v.</u>

<u>Martinez</u>, 436 U.S. 49, 55 (1978) (internal quotation marks and citations omitted).

Due to this unique status, the federal courts recognize two analytically distinct but

related bases that may defeat jurisdiction in cases involving tribes.  First, tribes

enjoy an affirmative defense of sovereign immunity as to many civil actions,

subject to the limitation that Congress maintains plenary authority to restrict tribes'

sovereign immunity.  <u>See</u> <u>id.</u> at 58; <u>Tamiami Partners, Ltd. v. Miccosukee Tribe of</u>

<u>Indians of Fla.</u>, 177 F.3d 1212, 1224 (11th Cir. 1999).  And tribes, of course, may

waive this immunity.  <u>Tamiami Partners</u>, 177 F. 3d at 1224.

Second, certain issues are, by their very nature, inherently reserved for

resolution through purely tribal mechanisms due to the privilege and responsibility

of sovereigns to regulate their own, purely internal affairs (and due to the

concomitant impropriety of the federal courts dictating answers to such questions).

Examples of such issues include membership determinations, inheritance rules,

domestic relations, and the resolution of competing claims to tribal leadership.

<u>See, e.g.</u>, <u>Montana v. United States</u>, 450 U.S. 544, 564 (1981) (describing retained

inherent tribal authority over "the powers of self-government" as involving "only

the relations among members of a tribe" and listing examples of such powers); <u>In</u>

<u>re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.</u>, 340 F.3d 749, 767

(8th Cir. 2003) (finding a lack of jurisdiction to resolve an internal tribal leadership dispute between competing factions).

Here, the Tribe asserts no claims of sovereign immunity; the Tribe seeks entry into federal court to press its RICO claims pursuant to 18 U.S.C. § 1964(a) and (d).  In the absence of a wholly non-justiciable issue, federal question jurisdiction exists pursuant to 28 U.S.C. §§ 1331, 1362, and the Tribe has met its burden of establishing jurisdiction.  See Tetco Metal Products, Inc. v. Langham, 387 F.2d 721, 723 (5th Cir. 1968) ("The party seeking to invoke the jurisdiction of a court has the burden of establishing that jurisdiction exists.").[3]  The non-Tribal-member attorney defendants argue, however, that theories of fraud and embezzlement lie at the heart of the Tribe's RICO claims.  They also argue that no determination of embezzlement may be reached without exploring the limits of Cypress's authority under Tribal law—if Tribal law permitted Cypress to take over $26 million in cash and services for himself and his close confidants while concealing his scheme from the Tribe, then any alleged conspiracy and self-dealing were not actually illegal (and the alleged secrecy may have been mere political image control rather than a conspiratorial attempt to conceal an illegality).

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

11

In accepting this argument, the district court correctly determined that it was necessary to examine the federal claims in the case to determine if "at their core" they presented important matters of internal Tribal governance bearing upon the Tribe's status as a sovereign. We believe this case presents a close question in this regard. We disagree, however, with the conclusion that the current pleadings present a genuine question regarding the presence of a non-justiciable issue. We reach this conclusion for two reasons.

First, and most importantly, the mere suggestion of a dispute regarding tribal law is insufficient to trigger the intra-tribal dispute doctrine. Instead, to trigger the intra-tribal dispute doctrine, a case must present a genuine and non-frivolous question of tribal law.

This case does not present such a question because the argument that Cypress's actions were in accord with Tribal law is a speculative suggestion, at best. It is by no means clear that any actual dispute exists regarding the scope of Cypress's authority to use funds or hire counsel. The defendant attorneys' argument in this regard rests on speculation, one vague and ambiguous statement in the complaint, and an absence of any actual references to Tribal law. Cypress's lack of authority to grossly enrich himself at Tribal expense is expressly stated or implicitly presumed throughout most paragraphs of the Tribe's extensive complaint. The alleged secrecy of the schemes also is inconsistent with the

12

defendant attorneys' suggestion that Cypress was acting in accord with his authority. One statement in the complaint, standing alone, suggests broad authority for Cypress—the statement that he "oversaw, controlled, supervised and had unrestricted access and control over all the financial funds and records of the [Tribe] which are the subject of this lawsuit." This conclusory and isolated statement may indicate that Cypress truly possessed unfettered discretion to enrich himself; it may merely indicate, however, that he operated under thorough lack of oversight.

Our jurisdiction over an otherwise justiciable RICO claim does not fail merely due to the suggestion that an issue of tribal law may arise based on the presence of an errant, unclear, and potentially inconsistent statement in an extensive pleading. The facts of this case do not require us to decide whether the intra-tribal-dispute doctrine may ever find application in this or a similar case. We hold merely that more than the speculative assertion of undefined Tribal law and reference to a vague and seemingly errant statement in a pleading is required to introduce a genuine question of Tribal law into the case and convert the otherwise justiciable RICO claim into a non-justiciable matter of internal Tribal affairs.[4]

---

[4] Although we base our decision only on the pleadings, subsequent developments including an evidentiary hearing on a sanctions motions, state court rulings, and attorney representations at oral argument shed additional light on the theories and sources of Tribal law potentially at play in this matter. Such developments, however, are not part of the present record and play no part

13

Second, even if at some future point the court is presented with a seemingly genuine question of Tribal law regarding whether the alleged acts of embezzlement and self-dealing were within the scope of Cypress's authority, it is not necessarily the type of question the court is categorically precluded from addressing. It does not touch upon the cited matters of membership disputes, active disputes between competing factions claiming current leadership power, domestic relations, or inheritance rules. Rather, it presents a potential scope-of-authority question we previously have examined in the context of suits against Tribal officials. See Tamiami Partners, 177 F. 3d at 1225 ("[W]e begin with the proposition that tribal officers are protected by tribal sovereign immunity when they act in their official capacity and within the scope of their authority; however, they are subject to suit under the doctrine of Ex parte Young when they act beyond their authority."). While the cited case involved injunctive, Ex Parte Young actions against tribal officials (and necessarily involved questions regarding the *constitutional* scope of permissible authority for tribal leaders) it nevertheless required the courts to examine the scope of authority granted by a tribe to its officials. And although courts are not free to delve into the resolution of outstanding questions of Tribal law, courts are competent to examine a developed record to determine whether an actual dispute exists regarding the scope of tribal authority.

in this appeal. We address only the question of jurisdiction based upon the record as presented to the district court.

14

Because we do not find the case as presented at this stage to involve a genuine dispute as to a non-justiciable intra-tribal issue, we hold that federal question jurisdiction exists, and we proceed to address the sufficiency of the pleadings under Rule 12(b)(6).

IV.    Sufficiency of the Pleadings

In the district court the parties presented arguments regarding the sufficiency of the pleadings.  The district court summarily concluded as an alternative basis for its dismissal of the suit that the Tribe failed to state a claim.  In its opening brief on appeal, the Tribe does not address this issue.  The attorney defendants urge this basis for affirmance in their appellees' brief, and the Tribe presented argument on this issue in its reply brief.

"Our longstanding case law rule is that an appellant who does not raise an issue in his opening brief may not do so in his reply brief, in a supplemental brief, in a rehearing petition, or on a remand from the Supreme Court . . . ."  United States v. Durham, 795 F.3d 1329, 1330 (11th Cir. 2015) (en banc).  In Durham, the court softened this "longstanding . . . rule" but only to permit an appellant to raise an argument omitted from an opening brief when an intervening Supreme Court opinion overruled existing circuit law.  Id. at 1331 ("We leave our circuit law

15

intact insofar . . . as any issue based on a Supreme Court decision that was issued soon enough, as a practical matter, for it to have been included in the opening brief is concerned.").

While it may seem harsh to enforce this rule against a party as to an issue the district court referenced only in summary fashion and as an alternative basis for its judgment, the rule as described in Durham allows for no "summary-conclusion" or "alternative basis" exception.  To the contrary, we have held that:

> [t]o obtain reversal of a district court judgment that is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect. When an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed.

Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014).  Our court applies this waiver rule strictly, and we are not at liberty to recognize an exception for issues district judges rely upon in summary fashion or state as alternative explanations for their underlying judgments.  See Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1319 (11th Cir. 2012) (stating that "[a] passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."); Irwin v. Hawk, 40 F.3d 347, 347 n.1 (11th Cir.1994) (applying this standard to a pro se brief).

16

Finally, we note that Durham clearly indicates that the court's loosening of the rule was intended to be very narrow in scope and focused exclusively upon situations involving new Supreme Court authority that changes existing circuit precedent.[5]

The parties raised and briefed the Rule 12(b)(6) issue below, the district court clearly cited this issue as an alternative basis for its ruling, and the Tribe waived this issue by failing to raise it in the opening brief.  We therefore affirm the judgment of the district court on this alternative basis.

We nevertheless write further to explain our agreement with the district court's conclusion regarding the substance of this issue.  In general, a plaintiff must allege sufficient facts to make a claim "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v.

---

[5] The court stressed the limited nature of its holding repeatedly, concluding:

> The change in circuit law that our holding makes is enough to decide the question presented by the motion before us, and that is as far as our holding goes. We leave our circuit law intact insofar as cases that are no longer pending on direct appeal are concerned, insofar as any issue that was not previously foreclosed by binding precedent is concerned, and insofar as any issue based on a Supreme Court decision that was issued soon enough, as a practical matter, for it to have been included in the opening brief is concerned. And nothing in this decision loosens the strictures of the plain error rule, or affects the force of any appeal waiver agreed to in the district court. The only rule affected is the rule concerning the effect of a failure to raise a claim or theory in the opening brief that a party files where that claim or theory is based on an intervening Supreme Court decision.

Durham, 795 F.3d at 1331.

17

Iqbal, 556 U.S. 662, 678 (2009).  The court must accept as true the pleaded allegations of fact, but the court need not accept "legal conclusions."  Twombly, 550 U.S. at 570.  And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.

The standards of Twombly and Iqbal, however, are not the only measuring sticks for the present complaint.  When a plaintiff asserts RICO and RICO conspiracy claims, the court must look at the underlying allegations of racketeering predicates to determine the nature of the alleged wrongdoing.  When the underlying allegations assert claims that are akin to fraud, the heightened pleading standards of Rule 9(b) apply to the RICO claims.  Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316–17 (11th Cir. 2007).  As such, the pleading requirements do not extend merely to plausibility, they demand plausibility based upon Rule 9(b)'s heightened degree of specificity.  "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud."  Id.

Applying the Rule 9(b) standard to the present complaint, we note that the district court previously afforded the Tribe the opportunity to amend its complaint to add particularity.  In doing so, the Tribe submitted a 314-page second amended

18

complaint which, at first blush, appears to contain particularity: it contains more than 208 pages of tables identifying: (1) ATM withdraws by amount, date, and city; (2) meeting dates for business council or general council meetings where select defendants "upon information and belief" were present and financial matters were discussed; and (3) invoice numbers and dates for bills from Lewis Tein to the Tribe as well as dates the Tribe paid those invoices.  These 208 pages, however, actually consist of a 34-page list of ATM transactions; 6 identical 17-page listings of the Lewis Tein invoices and dates; and 8 identical 9-page listings of the business council and general council meeting dates.  Much of the remainder of the complaint is spent restating generalized allegations as state claims against various combinations of defendants.  The complaint's 314 pages, therefore, appear largely to be an attempt to create the impression of specificity through page-number "shock and awe."

It is unnecessary in this case to focus specifically on the elements of the alleged predicate offenses for the RICO claims.  The deficiency of the pleadings exists at a more fundamental level.  Looking first at the allegations concerning the attorney defendants, the complaint suffers from a wholesale lack of detail to satisfy the plausibility standard of Iqbal and Twombly or the heightened requirements of Rule 9(b).  The complaint alleges generally that the attorneys billed the firm for legitimate services to the Tribe as well as illegitimate or fictitious services.  The

19

complaint also alleges generally that the attorneys received payment at inflated rates for their services and provided services to individual tribal members at Tribal expense under the auspices of fictitious loan arrangements.  No attempt is made, however, to articulate what services were deemed legitimate and proper, what services comprised part of the alleged fraudulent scheme, and what rates were inflated.[6]  Further nothing is alleged to suggest the attorneys conspired, agreed or were otherwise aware their representation of the firm or of some of its members was unauthorized.  Regardless of the extent of Cypress's authority, the complaint alleges he engaged the attorneys on behalf of the Tribe and on behalf of himself and other Tribal members as individuals.  Further, the extensive tables listing attorney invoice numbers, invoice dates, and payment dates do not suggest what services, legal matters, attorneys, or dollar amounts were associated with which invoices.  There is, therefore, insufficient specificity to distinguish between what attorney matters the Tribe deems to have been legitimate and what the Tribe deems to have been illegitimate.  Finally, the Tribe alleges a kickback scheme in which the attorneys received payment and refunded money to Cypress, but there are no factual references to support these allegations.

---

[6] The complaint does allege specific instances of personal representation of Cypress, namely, representation in a criminal matter and a civil matter concerning a car accident while Cypress was intoxicated.  In addition, the complaint alleges representation of Cypress on an IRS matter. The complaint does not allege specific facts to illustrate attorney knowledge that such representation was somehow illicit or beyond Cypress's authority.

20

This leaves the allegations against Tribal members Martinez, Hernandez, and Cypress.  Looking only at the allegations of fact surrounding Cypress, there likely exists sufficient detail to articulate plausible claims of embezzlement and theft.  The allegations against Martinez and Hernandez as related to the RICO claims, however, fare no better than the claims against the attorneys.  Any sufficiency of detail regarding Cypress simply does not extend to the other defendants to satisfy the pleading requirements for the Federal RICO or RICO conspiracy claims.  And, one person's nefarious acts do not define a RICO enterprise.  Even if the Rule 12(b)(6) issue had not been waived, therefore, we would agree with the conclusion that the Tribe failed to meet the pleading standards.

We affirm the judgment of the district court.