[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-11438

Non-Argument Calendar

_____

JOSEPH ANTHONY MARTINO, JR.,

Petitioner-Appellant,

*versus*

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
U.S. Tax Court
Agency No. 17336-21

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Dr. Joseph Martino made certain divorce-related payments to his ex-wife. On his federal tax returns for 2017 and 2018, Martino claimed that those payments were deductible alimony. After the IRS denied Martino's claimed deductions, he filed a petition with the United States Tax Court. The Tax Court granted summary judgment in the IRS's favor, and Martino appealed. Because Martino's payments to his ex-wife do not meet the statutory criteria for deductible alimony, we **AFFIRM** the Tax Court's judgment.

## I

### A

This appeal hinges on a series of agreements and court orders relating to Martino's divorce from Cindy Roberts—which means that some wind-up is necessary. Before Martino and Roberts's divorce was finalized, the former couple reached a settlement agreement concerning their marital property. That agreement stated that it was "meant to be an equitable division of the marital property [that is] non-taxable to either party." Among other things, the agreement provided that Martino would gain sole possession of the former couple's marital residence in exchange for a $2.2 million payment to Roberts. In a separate provision, the agreement spelled out Martino's obligation to pay Roberts $3,000 per month "as taxable periodic alimony." A few months later, a Georgia court issued a final divorce decree that dissolved Martino and Roberts's

marriage. That decree incorporated the former couple's settlement agreement "as if quoted *verbatim*."

A few months later, Martino and Roberts signed a consent order that modified Martino's obligations under the divorce decree. In exchange for some concessions by Roberts, Martino now agreed to pay his ex-wife $3.5 million for the marital residence—a payment that Martino would make in three installments. The consent order reiterated that these payments would be "tax-free" to Roberts.

Martino failed to pay the second installment, prompting Roberts to move for contempt and the court to enter another consent order. That order required Martino to pay the second installment with interest, and it directed Martino to execute a deed giving Roberts the right to foreclose on the marital residence if Martino failed to make the third installment. When the third installment came due, Martino failed to pay it, and Roberts moved for contempt again. This led the court to issue a contempt order requiring Martino to make the $3 million payment by a specific date. But shortly after the contempt order's issuance, Martino filed for bankruptcy. The marital residence was sold in Martino's bankruptcy, but the proceeds of that sale went to other creditors—not Roberts. Martino received a bankruptcy discharge of various debts, but the bankruptcy court ruled that Martino's $3 million obligation to Roberts was nondischargeable.

In a renewed effort to have Martino satisfy his debt to Roberts, the Georgia court imposed a revised payment schedule that

included one immediate payment and a series of monthly payments. Consistent with this new plan, the court issued two income-deduction orders that directed Martino's insurers to withhold specific sums (totaling $25,000) from Martino's monthly disability insurance distributions and instead pay those sums directly to Roberts. The income-deduction orders specified that the withheld sums were "for the previously owed arrearage due to [Ms. Roberts] in the amount of THREE MILLION DOLLARS ($3,000,000) plus interest." The court also directed Martino to maintain an irrevocable life insurance policy, with Roberts as sole beneficiary, "in an amount equivalent to his outstanding obligation."

Over the next six years, Martino made the monthly withholding payments to chip away at his $3 million obligation to Roberts. But eventually, Martino became delinquent with regard to other payments on which the former couple had settled, including alimony. In response, the Georgia court issued another consent order detailing how Martino's payments were to be applied to his various outstanding debts. Starting in October 2016, Martino's monthly $25,000 payments were first to go to the balances of five obligations, including his past-due alimony of $27,000. When those outstanding balances were satisfied, all succeeding payments would go to the "outstanding balance due on the property division payment that was in the original principal amount of $3 million, plus interest."

By the end of 2016, Martino's monthly payments had discharged the past-due amounts he owed Roberts for alimony, child

support, and uninsured medical expenses. In both 2017 and 2018, Martino continued to make the monthly payments, amounting to $300,000 for each year. In 2017, Martino's payments first applied to his outstanding obligations to defray Roberts's attorney's fees and to his court-ordered life insurance premiums—for a total of $125,023. All other debts having now been satisfied, the rest ($174,977) went to the $3 million marital-residence debt—and so did the entire $300,000 for 2018.

**B**

Martino filed late tax returns for both 2017 and 2018. His 2017 return claimed a $43,343 deduction for a net operating loss— but no deduction for alimony. Martino later filed an amended 2017 return in which he claimed a $300,000 deduction for alimony, but the IRS did not accept the amended return for filing. On his 2018 return, Martino again claimed a $300,000 alimony deduction.

The IRS selected Martino's 2017 and 2018 returns for examination. Eventually, the agency issued Martino a notice of deficiency, which disallowed Martino's 2017 net-operating-loss deduction and his 2018 alimony deduction. In light of these rejected deductions, the agency asserted that Martino owed an additional $11,856 and $8,194 in taxes respectively for 2017 and 2018.

Martino petitioned the United States Tax Court to redetermine his tax deficiencies. Martino eventually filed a motion for summary judgment, arguing that he was entitled to $300,000

alimony deductions for each of 2017 and 2018.[1]   The Commissioner of Internal Revenue objected to Martino's motion and filed a cross-motion for summary judgment, contending that the relevant payments weren't deductible alimony but instead constituted nondeductible payments toward a marital property settlement.

The Tax Court ruled in the Commissioner's favor.  In the court's view, Martino's payments did not meet the requirements for deductible alimony as laid out in the Internal Revenue Code at 26 U.S.C. §§ 215 and 71.  Accordingly, the Tax Court granted the Commissioner's summary-judgment motion and upheld Martino's tax deficiencies for 2017 and 2018.

This is Martino's appeal.

## II

The sole issue on appeal is whether Martino's $300,000 payments in each of 2017 and 2018 qualified as deductible alimony.[2] The taxpayer bears the burden of demonstrating that the IRS's deficiency determination is incorrect.  *Webb v. Comm'r*, 872 F.2d 380, 381 (11th Cir. 1989); *see* Tax Ct. R. 142.  Income-tax deductions are matters of legislative grace, and taxpayers must comply with the specific requirements for any deductions they claim.  *INDOPCO,*

---

[1] Martino does not contest the disallowed net-operating-loss deduction.

[2] We review a decision from the Tax Court in the same manner and to the same extent as a decision from a district court in a non-jury civil action. 26 U.S.C. § 7482(a)(1).  We review the Tax Court's legal conclusions de novo and its factual findings for clear error.  *Long v. Comm'r*, 772 F.3d 670, 675 (11th Cir. 2014).

*Inc. v. Comm'r*, 503 U.S. 79, 84 (1992).  In short, "the taxpayer must clearly establish his entitlement to a particular deduction."  *Long v. Comm'r*, 772 F.3d 670, 678 (11th Cir. 2014) (citation and quotation marks omitted).

For divorce or separation instruments executed before 2019, the Internal Revenue Code distinguishes between alimony payments and transfers pursuant to a division of property.[3]  Alimony payments are deductible by the payor, 26 U.S.C. § 215(a), but taxable to the payee, *id.* §§ 61(a)(8), 71(a).  By contrast, property transfers "incident to the divorce," including transfers by an equitable division of marital property, are generally neither taxable nor deductible.  *See id.* § 1041(a)(2).  Under § 71(b)(1), a cash payment constitutes a deductible "alimony or separate maintenance payment" only if it meets four requirements.  *See id.* § 71(b)(1).

Section 71(b)(1)(B) lays out one of those requirements.[4]  Under that provision, a payment qualifies as deductible alimony only if "the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income

---

[3] The Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 11051, 131 Stat. 2054, 2089–90, repealed the alimony deduction outlined in 26 U.S.C. §§ 215, 71, and 61(a)(8) as applied to divorce or separation instruments that were executed or (in certain cases) modified after December 31, 2018.  The divorce instruments at issue here were executed or modified before that date, so the relevant provisions still apply.

[4] Because § 71(b)(1)'s conditions are in the conjunctive and because we conclude that Martino's payments do not satisfy § 71(b)(1)(B), we—like the Tax Court—confine our analysis to that provision.

under [section 71] and not allowable as a deduction under section 215." *Id.* § 71(b)(1)(B). As the Tax Court observed, § 71(b)(1)(B) "is drafted somewhat unartfully." *Martino v. Comm'r*, T.C. Memo. 2024-18, at *8. Phrased another way, § 71(b)(1)(B) "treats a payment as nonalimony if the governing divorce or separation instrument designates the payment as such." *Estate of Goldman v. Comm'r*, 112 T.C. 317, 323 (1999), *aff'd sub nom. Schutter v. Comm'r*, 242 F.3d 390 (10th Cir. 2000).

As the "common usage" of the word "designate" indicates, the governing divorce instrument "must contain a clear, explicit and express direction" that the relevant payment does not constitute alimony. *Richardson v. Comm'r*, 125 F.3d 551, 556 (7th Cir. 1997). But the document need not "mimic the statutory language" or "specifically refer to sections 71 and 215"; instead, "the divorce or separation instrument contains a nonalimony designation if the substance of such a designation is reflected in the instrument." *Goldman*, 112 T.C. at 323. *Compare id.* at 323–24 (ruling that monthly payments did not qualify as alimony under § 71(b)(1)(B) where the divorce settlement agreement stated that the payments "were '[i]n furtherance of the equitable division of property'" and directed that the payments be "reported on the parties' tax returns as a nontaxable event"), *with Richardson*, 125 F.3d at 557 (concluding that payments did constitute deductible alimony under § 71(b)(1)(B) because the relevant document "d[id] not designate that the payments to [the spouse] be tax-free").

Martino's payments do not count as deductible alimony because the governing divorce instruments contain multiple "clear, explicit and express direction[s] to that effect." *Richardson*, 125 F.3d at 556. Martino and Roberts agreed that Martino would hold on to the marital residence and pay Roberts $2.2 million in return. The former couple's settlement agreement—incorporated *verbatim* by the court's divorce decree—specified that it was "meant to be an equitable division of the marital property [that is] *non-taxable* to either party." *Martino v. Comm'r*, T.C. Memo. 2024-18, at *2 (emphasis added). The agreement had a separate clause obligating Martino to pay Roberts $3,000 per month "as taxable periodic alimony." *Id.*

The Georgia court later increased Martino's obligation to $3.5 million—divided into two $250,000 installments and a final $3 million payment. The court's order confirmed yet again that Martino's payments would be "*tax-free* to Ms. Roberts." *Id.* at *9 (emphasis added). In the ensuing years, the court issued more orders to address Martino's failure to fulfill his obligation to Roberts—including the two income-deduction orders that withheld Martino's monthly disability insurance distributions and redirected them to Roberts. Those orders expressly stated that the withheld amounts were "for the previously owed arrearage due to [Roberts] in the amount of THREE MILLION DOLLARS." *Id.*

After Martino paid the required sums for six years, he fell behind on other obligations, prompting the final relevant consent order. The court directed that the monthly $25,000 payments

would first discharge five other debts and then go back to reducing the "outstanding balance due on the property division payment that was in the original principal amount of $3 million." *Id.* at *10. Consistent with this order, Martino's 2017 payments first applied to his outstanding obligations to defray Roberts's attorney's fees and his court-ordered life insurance premiums—for a sum of $125,023—which settled all of Martino's other obligations.[5] The remaining $174,977 of the 2017 payments—and the full $300,000 for 2018—went to the $3 million marital residence settlement.

In sum, the governing divorce instruments contained multiple nonalimony designations for the monthly payments that Martino made to Roberts in 2017 and 2018—from the settlement agreement as incorporated by the divorce decree to the court's income-deduction orders and final consent order. Martino's insistence to the contrary lacks merit. Martino focuses mainly on the court's income-deduction orders, contending that those orders contained no "statement that the payments [we]re not alimony or that the payments w[ould] not be treated as income to Dr. Martino's ex-wife." Appellant's Br. at 10. Martino is incorrect twice over. The income-deduction orders did make clear that they had nothing to

---

[5] Martino did not argue for any potential alimony deduction based on the payments for Roberts's attorney's fees and the life-insurance premiums, so the Tax Court considered that issue conceded. Martino does not dispute that concession on appeal but instead continues to seek a $300,000 deduction for each of 2017 and 2018. Martino has thus waived any argument based on these other sums. *See Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1210–11 (11th Cir. 2015).

do with alimony but instead were targeted at Martino's obligation regarding the marital residence. More importantly, Martino is wrong in his narrow focus on the income-deduction orders— which are only part of the picture. The term "divorce or separation instrument" includes both "a decree of divorce" and the "written instrument[s] incident to such decree." *See* 26 U.S.C. § 71(b)(2)(A). Our analysis therefore must begin with the settlement agreement as incorporated by the divorce decree, which clearly stated that Martino's debt for the marital residence was not alimony. *See supra* at 9. The court's later orders—including the income-deduction orders—did not change but rather reaffirmed that obligation's nature by compelling Martino to honor it. The nonalimony designation remained unchanged, which means that Martino's payments do not count as deductible alimony under § 71(b)(1)(B).

### III

Martino's 2017 and 2018 payments to Roberts did not meet the statutory requirements for deductible alimony. We thus **AFFIRM** the Tax Court's judgment.